# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| EQUITY PLANNING CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> WESTFIELD INSURANCE COMPANY, <br><br> Defendant. | Case No.: _____ <br><br><br> Removed from the Cuyahoga County Court of Common Pleas, No.: CV-20-932122 |

## DEFENDANT WESTFIELD INSURANCE COMPANY'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant, Westfield Insurance Company ("Westfield"), by and through undersigned counsel, hereby removes the above-captioned civil action from the Cuyahoga County Court of Common Pleas to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 as described below. Westfield reserves all defenses and rights available to it, including but not limited to, the right to contest service of process, personal jurisdiction, and to assert all applicable defenses. In support of its Notice of Removal, and for purposes of removal only, Westfield states as follows:

1. On April 27, 2020, Plaintiff Equity Planning Corporation ("E.P.") commenced this action by filing in the Cuyahoga County Court of Common Pleas a Class Action Complaint against Westfield, captioned *Equity Planning Corporation v. Westfield Insurance Company*, Civil Action No. CV-20-932122 (the "Complaint"). See Exhibit A.

2. Westfield was served with the Complaint on May 4, 2020. See Exhibit B.

3. The Complaint asserts claims for declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing against Westfield in connection with

Westfield's denial of a claim for Business Income, Extra Expense, and Civil Authority coverage under a commercial property policy issued to E.P. Exh. A at ¶¶ 16, 49-80.

4. In support of its claim, E.P., a commercial property management company, alleges that it submitted a claim with Westfield after several of its tenants ceased operations and closed their businesses by order of the State of Ohio due to the outbreak of the novel coronavirus, also referred to as COVID-19. *Id*. at ¶ 28.

5. E.P. alleges that the prevalence of COVID-19 makes it "probable that Equity sustained direct physical loss of or damage to its properties due to the presence of coronavirus, and has unquestionably sustained direct physical loss as the result of the pandemic and/or civil authority orders issued by the Governor of Ohio." *Id*. at ¶ 29.

6. The Complaint also sets forth class action allegations and seeks to certify the following classes/sub-classes:

    a. Declaratory Relief Class (Count I): All Landlords and commercial entities engaged in the management, leasing and/or administration of commercial rental properties throughout the United States who, from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Westfield and denied Business Income loss, Extra Expense and/or Civil Authority coverage due to COVID-19.

    b. Restitution/Monetary Relief Sub-Class (Counts I, II): All Landlords and commercial entities engaged in the management, leasing and/or administration of commercial rental properties throughout the United States who, from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Westfield and denied Business Income, Extra Expense and/or Civil Authority coverage due to COVID-19.

    c. Ohio State Sub-Class for Insurance Bad Faith (Counts I, II, and III): All Landlords and commercial entities engaged in the management, leasing and/or administration of commercial rental properties throughout the State of Ohio who, from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Westfield and denied, in bad faith, Business Income, Extra Expense and/or Civil Authority coverage due to COVID-19.

*Id*. at ¶ 39(a)-(c).

7. The Complaint alleges that, while it does not know the exact number of the members of the putative classes, E.P. "believes that Class Members number at least in the many thousands and possibly millions and are sufficiently numerous and geographically dispersed throughout the United States of America, and State of Ohio, so that joinder of all Class Members is impracticable." *Id*. at ¶ 42.

8. The Complaint seeks, on behalf of E.P. and each class member: declaratory relief, compensatory damages exceeding $25,000, restitution, prejudgment interest, punitive damages, attorneys' fees and costs, and other, unspecified relief. *Id*. at Prayer for Relief, pp. 20-21.

## I. JURISDICTION BASED ON CLASS ACTION FAIRNESS ACT, 28 U.S.C. §§ 1332

9. Section 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

10. Under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d) ("CAFA"), federal courts have original jurisdiction over cases filed as class actions involving: (i) minimal diversity, such that at least one plaintiff and one defendant are citizens of different states; (ii) one hundred or more class members; and (iii) an aggregate amount in controversy of at least $5,000,000. *See Roberts v. Marts Petcare US, Inc.*, 874 F.3d 953, 956 (6th Cir. 2017); *see also Am. Gen. Fin. Servs. v. Griffin*, 685 F. Supp. 2d 729, 732 (N.D. Ohio 2010); 28 U.S.C. § 1453(b) (authorizing removal of class actions in accordance with 28 U.S.C. § 1446).

3

### A. E.P. Filed This Case as a Class Action

11. This lawsuit is a putative class action as defined by 28 U.S.C. § 1332(d)(1)(B). CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C § 1332(d)(1)(B).

12. E.P.'s Complaint is titled "Plaintiff's Class Action Complaint" and seeks to certify three putative classes in reliance on Ohio Civil Rule 23—the Ohio equivalent of Federal Rule 23. Exh. A at Caption, ¶¶ 38-48.

### B. There is Minimal Diversity of Citizenship between the Parties

13. To satisfy CAFA's minimum diversity requirement, a party removing based under CAFA may demonstrate that "any member of a class of plaintiffs is a citizen of a state different from any Defendant[.]" 28 U.S.C. § 1332(d)(2)(A).

14. For purposes of jurisdiction, a corporation is a citizen in the state of its incorporation and its principal places of business. 28 U.S.C. § 1332(c)(1).

15. The Complaint alleges that Westfield is an Ohio Company organized under Ohio law. Exh. A at ¶ 2. Thus, Westfield is, and was at all relevant times, a citizen of the state of Ohio.

16. Although the Complaint does not set forth the citizenship of each of the putative class members, E.P. defines the putative Declaratory Relief Class and Restitution Monetary Relief Sub-Class as "nationwide" classes that include class members located "throughout the United States" and later alleges that the class members are "geographically dispersed throughout the United States of America." *Id*. at ¶¶ 39, 39(a)-(b), 42.

17. In addition, the Complaint alleges that Westfield "sells insurance in Ohio and throughout the country." *Id*. at ¶ 2.

18. At the time of E.P.'s alleged loss, Westfield had issued 13,733 commercial policies containing Business Income insurance coverage of the type at issue in this case to commercial landlord and commercial property manager insureds, whose covered properties are located in 36 states plus the District of Columbia. *See* Exhibit C (Declaration of Douglas C. Hall) ¶ 3.

19. In addition, to date, 1,296 claims have been made by Westfield's policyholders seeking Business Income coverage related to COVID-19 on account of losses in approximately 25 different states. *See id*. ¶ 4.

20. Accordingly, there is minimal diversity of citizenship between at least one plaintiff/putative class member and Westfield, satisfying CAFA's minimal diversity requirement. *See Rosas v. Carnegie Mortg., LLC*, 2012 WL 1865480, at *5 (C.D. Cal. May 21, 2012) ("Because the complaint alleges a 'nationwide class,' . . . minimal diversity necessarily exists."); *see also Dinsdale v. AD Telamerica Inc.*, 2015 WL 1757473, at *3 (N.D. Tex. Apr. 17, 2015) (minimal diversity established for purposes of CAFA where plaintiff alleged that defendant solicited business "throughout the United States").

C. **The Putative Classes Consist of Greater Than 100 Class Members**

21. To satisfy CAFA, the number of members of all proposed plaintiff classes must in the aggregate exceed one hundred. 28 U.S.C. § 1332(d)(5)(B).

22. The Complaint does not set forth the number of putative class members with precision. E.P. alleges, however, that the proposed class or classes "number at least in the many thousands and possibly millions." Exh. A at ¶ 42.

23. In addition, as noted above, at the time of E.P.'s alleged loss, Westfield issued 13,733 commercial policies containing Business Income insurance coverage of the type at issue in

5

this case to commercial landlord and commercial property manager insureds, and has to date received 1,296 Business Income claims related to COVID-19.  *See* Exh. C ¶¶ 3-4.

24. Accordingly, E.P.'s allegation satisfies the CAFA's 100-member threshold.

**D. The Amount-in-Controversy Requirement is Satisfied**

25. CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).  Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014).  To establish the amount in controversy sufficient to remove a class action case to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met." *Id*. at 89 (citation omitted).

26. Courts find it appropriate for a removing defendant to use estimates in order to calculate the amount in controversy for purposes of CAFA.  For example, in *Franklin v. CitiMortgage, Inc.*, 2012 WL 10192 (S.D. Ohio Jan. 3, 2012), the Southern District of Ohio cited with approval cases in which courts accepted defendants' estimates of the amount in controversy and held that "[i]t is not incumbent upon a defendant to establish to a legal certainty that the amount in controversy exceeds the jurisdictional threshold, but merely to show that it is more likely than not that the damages will exceed that threshold". *Id*. at *4-5.

27. Likewise, this Court has held that a removing defendant may satisfy its burden to establish the amount in controversy by using "calculation from the complaint's allegations," among other means.  *Norris v. People's Credit Co.*, 2013 WL 5442273, at *3 (N.D. Ohio Sept. 27, 2013) (internal quotation and citation omitted).

28. Here, E.P. seeks a monetary award "in excess of $25,000" on behalf of itself and each class member, in addition to punitive damages, attorney's fees, and declaratory relief. Ex. A at Prayer for Relief, pp. 20-21). E.P. further alleges that the class consists of "many thousands and possibly millions" of members. *Id*. at ¶ 42.

29. Even assuming a class of just 2,000 members—the most conservative estimate based on E.P.'s allegation of "many thousands" of class members—and using E.P.'s minimum $25,000 compensatory damages claim, the amount in controversy here is at least $50 million, ten times the amount required to establish jurisdiction under CAFA. "Courts routinely rely on such basic multiplication to determine whether the aggregate claims of a putative class likely exceed CAFA's threshold." *Cowit v. CitiMortgage, Inc.*, 2013 WL 142893, at *6 (S.D. Ohio Jan. 11, 2013). This estimate does not even account for punitive damages, attorney's fees, or the value of declaratory relief, all of which may be counted toward the amount in controversy. *See, e.g.*, *Fraley v. State Farm Mut. Auto Ins. Co.*, 2013 WL 4679954, at *2 (N.D. Ohio Aug. 30, 2013); *Karl v. Bizar*, 2009 WL 2175981, at *4-5 (S.D. Ohio Jul. 21, 2009).

30. Further, it is likely that many of the class members' alleged losses will far exceed the $25,000 amount set forth in E.P.'s Complaint. For example, E.P. disclosed to Westfield in a 2019 insurance application that it had annual gross receipts of $3,800,000 for the prior fiscal year. *See* Exh. C ¶ 5. Accepting as true E.P.'s allegation that, following Ohio's "Stay at Home Order," its tenants ceased paying rent, E.P. is reasonably estimated to be seeking up to $316,666.67 in lost income in the form of unpaid rent for each month that its tenants' properties were closed ($3,800,000 ÷ 12 = $316,666.67).

31. Accordingly, Westfield submits that E.P.'s Complaint satisfies CAFA's $5 million amount-in-controversy threshold.

## II. PROCEDURAL REQUIREMENTS

32. Copies of the Complaint, the Cuyahoga County Court of Common Pleas docket sheet, and all process, pleadings, orders, and documents filed in the Cuyahoga County Court of Common Pleas action are attached hereto pursuant to 28 U.S.C. § 1446(a).  *See* Exhs. A-B.

33. Removal is timely pursuant to 28 U.S.C. § 1446(b)(3) because Westfield filed this Notice of Removal within 30 days of being served with the Complaint.

34. The Cuyahoga County Court of Common Pleas lies within the Northern District of Ohio.  Removal to this district is proper because this Court presides over the county in which the present action is pending.  *See* 28 U.S.C. §§ 1441(a), 1446(a).

35. Pursuant to 28 U.S.C. § 1446(d), Westfield will promptly serve a copy of this Notice of Removal on counsel for E.P. and will file a copy of this Notice of Removal with the Cuyahoga County Court of Common Pleas.

36. The removal of this action terminates all proceedings in the Cuyahoga County Court of Common Pleas.  *See* 28 U.S.C. § 1446(d).

37. Westfield respectfully requests that this Court proceed with this lawsuit as if it had been originally filed in this Court, and that this Court grant Westfield such other relief to which it is justly entitled.

## III. RESERVATION OF DEFENSES

38. Nothing in this Notice of Removal shall be interpreted as a relinquishment of Westfield's right to assert any defense or affirmative matter.

39. Westfield reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendant Westfield Insurance Company respectfully gives notice that the above-entitled action is removed from the Cuyahoga County Court of Common Pleas to the United States District Court for the Northern District of Ohio.

    Respectfully Submitted,

    **FOX ROTHSCHILD LLP**

    s/ John J. Haggerty
    John J. Haggerty, Esq. (0073572)
    2700 Kelly Road, Suite 300
    Warrington, PA 18976
    Phone: (215) 345-7500
    Facsimile: (215) 345-7507
    jhaggerty@foxrothschild.com
    *Attorney for Defendant*
    *Westfield Insurance Company*

Dated: June 1, 2020