# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **EQUITY PLANNING CORPORATION** | **CASE NO. 1:20-CV-01204** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **WESTFIELD INSURANCE COMPANY,** | |
| **Defendant.** | **MEMORANDUM OF OPINION AND ORDER** |

Currently pending is Plaintiff Equity Planning Corporation's Motion to Remand, filed on July 6, 2020.  (Doc. No. 8.)  Defendant Westfield Insurance Company filed a Memorandum of Opposition in response on July 17, 2020.  (Doc. No. 9.)  Plaintiff filed a Reply in Support of its Motion on August 6, 2020.  (Doc. No. 12.)  On August 10, 2020, Defendant moved for leave to file a Sur-Reply, which the Court granted on August 25, 2020.  (Doc. No. 13.)  Defendant filed its Sur-Reply in Further Opposition on August 25, 2020.  (Doc. No. 14.)  Defendant also filed two Notices of Supplemental Authority, on September 1, 2020 and September 11, 2020.  (Docs. No. 15, 16.)

For the following reasons, Plaintiff's Motion to Remand is DENIED.

## I.    Procedural History

On April 27, 2020, Plaintiff Equity Planning Corporation ("Plaintiff" or "E.P.") filed a Class Action Complaint in the Court of Common Pleas of Cuyahoga County, Ohio against Defendant Westfield Insurance Company ("Defendant" or "Westfield").  (Doc. No. 1-1 at PageID# 11-13.) Plaintiff brought its Complaint on behalf of itself and a putative nationwide Declaratory Relief Class, a nationwide Restitution/Monetary Relief Sub-Class, and an Ohio state Sub-Class for Insurance Bad Faith.  (*Id.* at PageID# 20.)  On behalf of itself and these classes, Plaintiff alleged the following

claims: (1) a Declaratory Judgment claim; (2) a Breach of Contract claim; and (3) a Breach of Covenant of Good Faith and Fair Dealing claim.  (*Id.* at PageID# 25-31.)

On June 1, 2020, Defendant removed this action to this Court, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Doc. No. 1.)  On June 3, 2020, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, to strike the Class allegations.  (Doc. No. 5-1.)  Defendant's Motion to Dismiss remains pending while the parties await a ruling on the instant Motion.  (Doc. No. 7.)

Subsequently, Plaintiff filed its Motion to Remand on July 6, 2020.  (Doc. No. 8.)  Defendant filed a Memorandum of Opposition in response on July 17, 2020, to which Plaintiff replied on August 6, 2020.  (Docs. No. 9, 12.)  On August 10, 2020, Defendant moved for leave to file a Sur-Reply, which the Court granted on August 25, 2020.  (Doc. No. 13.)  Defendant filed its Sur-Reply in Further Opposition on August 25, 2020.  (Doc. No. 14.)  Defendant also filed two Notices of Supplemental Authority, on September 1, 2020 and September 11, 2020.  (Docs. No. 15, 16.)  Thus, Plaintiff's Motion is now ripe and ready for resolution.

## II.    Factual Allegations

Plaintiff's Complaint stems from losses it suffered as a result of the global COVID-19 pandemic.  (Doc. No. 1-1 at PageID# 13.)  E.P. is a commercial real estate management and leasing company.  (*Id.* at PageID# 12-13.)  It leases properties to tenants throughout Ohio and other states. (*Id.*)

As the seriousness of the COVID-19 global pandemic became clear, state officials across the country began issuing public health orders in an attempt to halt COVID-19's spread.  On March 23, 2020, the State of Ohio issued a stay-at-home order in which it ordered all Ohioans to stay at home

2

and all non-essential businesses to cease their activities until further notice.  (*Id.* at PageID# 17.)  E.P. leases commercial real estate to certain tenants who operate non-essential businesses.  (*Id.*)  Certain E.P. tenants were required to shut down their non-essential businesses during Ohio's stay-at-home order and, as a result, became unable to pay their rents to E.P.  (*Id.*)  Thus, E.P. itself sustained a "substantial loss of business income."  (*Id.*)  E.P. also alleges that the stay-at-home order resulted in "a loss of use of its Properties."  (*Id.*)

E.P. has a "commercial/business owner" Insurance Policy through Westfield.  (*Id.* at PageID# 14.)  The Policy indemnifies E.P. for losses, including "business income and extra expense."  (*Id.*)  Under the Policy, insurance applies to "the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Property is specifically prohibited by order of Civil Authority as the direct result of a covered loss to property in the immediate area of Plaintiff's Property."  (*Id.* at PageID# 14-15.)  E.P. alleges that "covered physical loss" includes the "loss of use and/or loss of utilization" of its properties.  (*Id.* at PageID# 15.)

After several of E.P.'s tenants ceased operations and became unable to pay their rents, E.P. filed a claim with Westfield "under the Policy's commercial/business income coverage."  (*Id.* at PageID# 18.)  On March 26, 2020, Westfield acknowledged it received E.P.'s claim.  (*Id.*)  On April 20, 2020, Westfield denied E.P.'s claim.  (*Id.*)

## III.    Standard of Review

Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  In addition, "[a]s a court of limited jurisdiction, a federal district court must proceed cautiously in determining that it has subject matter jurisdiction."  *Petrofski v. Chrysler LLC*, No. 5:07CV3619, 2008 WL 5725581, at *2

3

(N.D. Ohio Jan. 17, 2008).  Defendants removing an action under the Class Action Fairness Act ("CAFA") remain obligated to establish the jurisdictional requirements of the venue.  *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  CAFA does not shift defendants' burden of demonstrating by a preponderance of the evidence that the amount in controversy requirement is met.  *Id.*  "Further, [a]ll doubts as to the propriety of removal are resolved in favor of remand."  *Id.* (internal quotations omitted).

Under CAFA, "[a] class action may be removed to a district court of the United States in accordance with section 1446 . . . , without regard to whether any defendant is a citizen of the State in which the action is brought . . . ."  28 U.S.C. § 1453(b).  Thus, CAFA

> eliminates three constrictions on removal that are present in cases not under the Act: (1) the one-year general limit on removal of a case after the commencement of the state court action, *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 406-07 (6th Cir. 2007); (2) the rule that a "home-state" defendant may not remove the case; and (3) the requirement that all the defendants must consent to the removal. *See Westwood Apex v. Contreras*, 644 F.3d 799, 803-04 (9th Cir. 2011).

*In re Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 849, 853 (6th Cir. 2012).

## IV.    Analysis

In its Motion to Remand, E.P. urges this Court to exercise its discretion under *Brillhart v. Excess Insurance Co. of America* to decline exercising jurisdiction over the entire instant matter. (Doc. No. 8 at PageID# 344.)  E.P. argues that, under the Declaratory Judgment Act, this Court has discretion to refrain from exercising jurisdiction over its Declaratory Judgment claim, even though E.P. also seeks monetary damages for its other claims.  (*Id.* at PageID# 344-45.)  According to E.P.,

4

"the gravamen issue" of its Complaint is its request for "declaratory and injunctive relief" [1] and its claims for monetary relief are merely "contingent" upon receiving declaratory relief.  (*Id.* at PageID# 345.)  Therefore, this Court should decline to exercise its jurisdiction in this matter because E.P.'s "declaratory and injunctive relief is separable and distinct" from its request for monetary relief.  (*Id.*)

E.P. argues that each of *Brillhart*'s three factors weigh against this Court exercising jurisdiction over its Declaratory Judgment claim.  (*Id.*)  It further argues that all five of the Sixth Circuit's "*Grand Trunk*" factors also weigh heavily against this Court exercising jurisdiction.  (*Id.*; *see also Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), discussed *infra*.)  In its analysis of the *Grand Trunk* factors, E.P. repeatedly emphasizes the existence of "literally hundreds of parallel state court cases that are adjudicating the same business income loss and other insurance coverage issues related to the pandemic, in similar cases to this one . . . ." (*Id.* at PageID# 349.)  E.P. also argues that the COVID-19 pandemic has led to novel, complex questions of state law better suited for Ohio state courts, rather than federal courts, to address in the first instance. (*Id.* at PageID# 350.)  According to E.P., if this Court exercised jurisdiction, it would unnecessarily wade into an area of novel and unsettled state law: namely, how Ohio courts interpret business income loss insurance provisions in light of the COVID-19 pandemic.  (*Id.*)  Rather, according to E.P., this Court should avoid unnecessary friction with state courts and leave the interpretation and application of state insurance law to Ohio.  (*Id.* at PageID# 351.)

In response, Westfield makes three arguments: that this Court's jurisdiction over E.P.'s claims is mandatory, not discretionary, due to the presence of E.P.'s Breach of Contract claim; that *Brillhart*

---

[1] The Court notes that E.P. refers to seeking "declaratory and injunctive" relief in its Motion to Remand.  (Doc. No. 8 at PageID# 345.)  However, E.P.'s Prayer for Relief does not appear to seek any injunctive relief.  (Doc. No. 1 at PageID# 31-32.)

abstention should not apply here because there are no parallel state court proceedings; and that, even if this Court reaches the *Grand Trunk* analysis, the factors weigh in favor of exercising jurisdiction. (Doc. No. 9.)

First, Westfield argues that, "as a threshold matter, E.P.'s assertion of a breach of contract cause of action for damages . . . precludes the Court from remanding this case in its entirety" because the Court's jurisdiction over the breach of contract claim is non-discretionary.  (*Id.* at PageID# 364.) Westfield argues that, at most, the Court could stay the damages portion of E.P.'s action and remand E.P.'s Declaratory Judgment claim only.  (*Id.*)  However, Westfield argues, "any benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources" because the Court must exercise jurisdiction over the Breach of Contract claim.  (*Id.* at PageID# 366 (internal quotations omitted).)

Second, Westfield argues that the absence of parallel state court proceedings involving E.P. and Westfield strongly supports retaining jurisdiction in this Court.  (*Id.* at PageID# 367.)  Westfield argues that, unlike in a traditional *Brillhart* case, this case does not involve any parallel state court proceedings with which the exercise of federal jurisdiction may interfere.  (*Id.* at PageID# 367-69.) Rather, the *Brillhart* abstention doctrine is most often deployed when "a federal declaratory judgment claim is asserted in parallel with a competing state court proceeding," leading to the risk that a federal declaratory judgment will interfere with the parallel state court proceeding.  (*Id.* at PageID# 360.) According to Westfield, E.P.'s supposed "parallel" state cases are not actually parallel to the instant matter because those other cases "involve claims brought by *other* policyholders against *other* insurance carriers based on *other* insurance policies."  (*Id.* at PageID# 369.)  Westfield argues that

6

the mere existence of other COVID-19-related business income loss cases does not mean that this Court should decline to exercise jurisdiction in this particular case.

Finally, Westfield argues that each of the *Grand Trunk* factors weighs in favor of retaining jurisdiction. (*Id.*) Here, Westfield reiterates its argument that there are no parallel state proceedings, which weighs heavily in favor of exercising jurisdiction. (*Id.* at PageID# 370.) Westfield also argues that the issues of state law presented in E.P.'s Complaint are neither novel nor complex but are governed by "well-established principles of contract interpretation," which can be capably handled by a federal court. (*Id.* at PageID# 372-73.)

E.P. filed a Reply in Support of its Motion to Remand. (Doc. No. 12.) On Reply, E.P. asserts the following arguments: that its assertion of a money damages claim does not preclude remand because the money damages claim is "contingent" on its "primary request" for declaratory relief being granted; that the "hundreds" of COVID-19 business loss insurance cases ongoing in Ohio state courts qualify as parallel proceedings because they involve similar contract language; and that all five *Grand Trunk* factors support remand. (*Id.*) In its second *Grand Trunk* analysis, E.P. incorporates a new argument not addressed in its initial motion: that the forum defendant rule should bar Westfield from removing the instant matter to this Court, and that Westfield's disregard of this rule is evidence of Westfield engaging in "procedural fencing," in contravention of the third *Grand Trunk* factor. (*Id.* at PageID# 389-90.)

Westfield moved for, and the Court granted, leave to file a Sur-Reply. In its Sur-Reply, Westfield argues that E.P.'s attempt to "dramatically expand" the scope of what is considered a parallel state action contravenes established Supreme Court and Sixth Circuit precedent that holds a parallel proceeding is one that involves "the same parties and issues and from which the federal case

7

arises." (Doc. No. 14 at PageID# 415, 416-17.) Westfield also argues that the forum-defendant rule does not apply here because Westfield removed the case pursuant to CAFA, which eliminated the forum-defendant rule for class actions. (*Id.*)

**A. Whether Monetary Damages Claim Precludes Remand**

The Supreme Court has explained that federal courts are not obligated to exercise subject matter jurisdiction in declaratory judgment actions. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act . . . it was under no compulsion to exercise that jurisdiction."). The Sixth Circuit outlined five factors district courts consider in evaluating whether to decline or retain jurisdiction over a declaratory action in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984).

Before reaching the *Grand Trunk* factors, however, the Court finds that it is precluded from remanding this case in its entirety because the Court has subject-matter jurisdiction over E.P.'s Breach of Contract claim pursuant to CAFA. Federal courts have "a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). According to the Supreme Court,

> In cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court. By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damage actions.

*Id.* at 721.

8

The Court views the presence of E.P.'s monetary damages claim to be "dispositive of the motion to remand," as did the court in *Knowlton Constr. Co. v. Liberty Mutual Ins. Co.*, No. 2:07-CV-0748, 2007 WL 4365690, at *3 (S.D. Ohio, Dec. 13, 2007).  In *Knowlton*, the plaintiff "sought the remand of this case to state court despite the fact that the complaint includes damage claims as well as discretionary relief."  *Id.*  The court held that it had "jurisdiction over Knowlton's damage claims which exists separately from Knowlton's claim for declaratory relief.  That is, if the complaint had simply requested damages for breach of contract and bad faith, the case could still have been removed because all of the jurisdictional requirements of § 1332(a) are met with respect to those claims.  The exercise of jurisdiction over damage claims is mandatory and not discretionary as it is for the declaratory judgment claim."  *Id.* (internal citations omitted).

Like the *Knowlton* plaintiff, E.P. asserted both a Declaratory Judgment Claim (for which it seeks a declaratory judgment), as well as a Breach of Contract Claim (for which it seeks monetary damages).  (Doc. No. 1-1 at PageID# 25-28, 31-32.)  And, like in *Knowlton*, this Court's jurisdiction "over damage claims is mandatory and not discretionary as it is for the declaratory judgment claim." *Knowlton*, 2007 WL 4365690, at *3; *see also Farris v. State Farm Ins. Co.*, 617 F. Supp. 2d 654, 659 (N.D. Ohio 2008) ("Here, Farris' claims for monetary damages arising out of State Farm's alleged breach of her settlement agreement with the other driver, *over which this Court must exercise jurisdiction*, cannot be adjudicated without considering the issues raised in the declaratory judgment claim . . . .") (emphasis added).  Therefore, even if this Court chose not to exercise discretion over E.P.'s Declaratory Judgment claim, this Court must still exercise jurisdiction over E.P.'s Breach of Contract claim and could not remand the entire matter back to state court.  *Id.*; *see also Tibbitts v. Great Northern Ins. Co.*, No. 2:20-cv-10029, 2020 WL 4333546, at *2 (E.D. Mich. July 28, 2020).

9

The Court finds that it does not "serve judicial economy to remand the declaratory judgment claim while maintaining jurisdiction over" E.P.'s remaining claims.  *Id.*  The Sixth Circuit explained in *Adrian v. Michigan Public Svc. Com'n* that when a plaintiff seeks relief in "addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources."  *Adrian v. Michigan Public Svc. Com'n*, 481 F.3d 414, 422 (6th Cir. 2007).  In *Adrian*, the Sixth Circuit held that "[t]he claims in this case for which declaratory relief is requested and those for which injunctive relief is requested are so closely intertwined that judicial economy counsels against dismissing the claims for declaratory judgment relief while adjudicating the claims for injunctive relief."  *Id.*  Similarly, in *Farris*, another court in this District confronted a comparable situation: a plaintiff brought a declaratory judgment and breach of contract claim against her insurer and the defendant-insurer removed the case.  *Farris*, 617 F. Supp. 2d at 659.  The *Farris* court found that it must exercise jurisdiction over Farris's money damages claims, which could not "be adjudicated without considering the issues raised in the declaratory judgment claim, which form the basis for determining whether State Farm's alleged breach was actually a breach or not.  Thus, there is no basis for bifurcating Farris' claims and sending only the declaratory judgment portion back to state court."  *Id.* (citing *Knowlton*, 2007 WL 4365690, at *3).

As in *Farris*, the question of whether Westfield breached the contract is closely related to the question of whether Westfield had a duty to cover E.P.'s COVID-19-related business losses at all. E.P. alleges that Westfield breached the insurance contract when it denied coverage for E.P.'s and Class Members' losses, which resulted in "substantial and ongoing monetary damages in excess of $25,000."  (Doc. No. 1-1 at PageID# 28.)  However, Westfield could only have breached the

10

insurance contract if it had a duty to cover E.P.'s and Class Members' COVID-19-related business income losses. The Court agrees with Westfield that there is no benefit to staying E.P.'s Breach of Contract claim and remanding E.P.'s Declaratory Judgment claim because both are as closely interrelated as the claims in *Farris* and *Adrian*. *See also Turek Enter. Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *5-10 (E.D. Mich. Sept. 3, 2020) (addressing plaintiff's COVID-19-related breach of insurance contract and declaratory judgment claims concurrently).

E.P. goes to great lengths to transform the interrelatedness of Counts One (Declaratory Judgment) and Two (Breach of Contract) into "primary" and "contingent" claims. However, the Court finds this argument unavailing. E.P. supports its assertion that its monetary damages claims are "contingent" on the outcome of its "primary" Declaratory Judgment claim by citing *Gooch v. Life Inv. Ins. Co. of Am.* (Doc. No. 8 at PageID# 345.) However, *Gooch* does not support E.P.'s position, but rather, undermines it. In *Gooch*, the plaintiff asked the district court to first certify a declaratory relief class and then, at a later time as deemed appropriate by the court, to certify a monetary damages sub-class. *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 427 (6th Cir. 2012). The issue in *Gooch* was not one of jurisdiction, but one of class certification. *See Beal v. Lifetouch, Inc.*, No. CV 10-8454-JST (MLGx), 2012 WL 13006210, at *4 (C.D. Cal. Dec. 7, 2012) ("[A]t issue in *Gooch* was the propriety of successive certifications of claims within a *single* case."). This Court has not yet reached the issue of whether and when to certify the putative classes. Rather, this Court must decide whether to exercise jurisdiction over E.P.'s Declaratory Judgment claim. In *Gooch*, the district court already exercised its jurisdiction over a mix of declaratory judgment and monetary relief claims. The Court believes a similar exercise of jurisdiction is appropriate here. *See, e.g., Tibbitts*, 2020 WL 4333546, at *2; *see also Q Holding Co. v. Repco, Inc.*, No. 5:17-CV-445, 2017 WL 2226730, at *3

11

(N.D. Ohio May 22, 2017) ("Plaintiff's rescission claim provides an independent basis for jurisdiction. Because the declaratory judgment and rescission claims are based on the same set of facts, it makes little sense to consider the rescission claim but decline to hear the declaratory judgment claim.").

Based on the above, the Court finds that there is no benefit to staying the damages portion of E.P.'s Complaint while remanding its interrelated Declaratory Judgment claim because the Court has mandatory subject-matter jurisdiction over E.P.'s monetary damages claim. The Court's mandatory jurisdiction over E.P.'s monetary damages claim alone is sufficient to deny E.P.'s motion to remand. *See Tibbitts*, 2020 WL 4333546, at *2 ("The Court need not consult those [*Grand Trunk*] factors here though, as this is not purely an action for declaratory judgment. Rather, the Complaint asserts damages claims under Michigan law, in addition to a claim for declaratory judgment. The Court has diversity jurisdiction over Plaintiff's breach of contract and Michigan statutory claims pursuant to 28 U.S.C. § 1332(a), independent of the declaratory judgment claim. Accordingly, even if the Court declined to exercise judgment over the declaratory judgment count, Plaintiff's other claims would necessarily remain before this Court.") Nonetheless, because the Court *could* decline to exercise jurisdiction over E.P.'s Declaratory Judgment claim, the Court will briefly address the *Grand Trunk* factors.

### B. Application of the *Grand Trunk* Factors

Federal courts are not obligated to exercise subject matter jurisdiction in declaratory judgment actions. *See Brillhart*, 316 U.S. at 494 ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act . . . it was under no compulsion to exercise that jurisdiction.").

Rather, the Sixth Circuit considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act[2] jurisdiction is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk*, 746 F.2d at 326 (citations omitted). *See also United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019).

Although the above formulation indicates that courts should balance the five factors, the Sixth Circuit has never indicated the relative weights of the factors. *See United Specialty Ins. Co.*, 936 F.3d at 396. Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). The Sixth Circuit has noted, in weighing these factors, "[d]istrict courts must be afforded substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and [the] fitness of the case for resolution, are peculiarly within their grasp.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).

---

[2] The Declaratory Judgment Act provides, with certain exclusions not applicable here, that: "In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

For the following reasons, the Court finds that, on balance, the *Grand Trunk* factors support the exercise of jurisdiction over E.P.'s Declaratory Judgment claim relating to whether Westfield had a duty to provide coverage.

### 1.   Whether Adjudicating the Declaratory Action Will Settle the Controversy

"The first factor requires the Court to consider whether the dispute at issue is an 'independent dispute' or if there is a parallel state action. *See Grand Trunk*, 746 F.2d at 326 ('The instant action does not involve an independent dispute because it arises from and affects a pending Illinois lawsuit'). If the dispute is independent, the action will settle the controversy. *See id.*"  *Clifford v. Church Mut. Ins. Co.*, No. 2:13–cv–853, 2014 WL 4805473, at *2 (S.D. Ohio Sept. 26, 2014) (quoting *Grand Trunk*, 746 F.2d at 326).  *See also United Specialty Ins. Co.*, 936 F.3d at 398 (where appellant could point to "no proceeding in which parallel issues are being litigated," the "district court did not err in determining that the one live controversy over coverage will be settled by a declaratory judgment").

Plaintiff insists in its Motion and Reply that "there are literally hundreds of parallel state court cases that are adjudicating the same business income loss and other insurance coverage issues related to the pandemic, in similar cases to this one, that Westfield has removed to this Honorable Court." (Doc. No. 8 at PageID# 349.)  Even though E.P. cannot point to a specific state court proceeding involving it and Westfield, it argues that the "coverage issues at issue in this matter are based on identical and/or nearly identical standard Insurance Services Office, Inc. ('ISO') insurance coverage forms and language that are being litigated in state courts across the country, including Ohio state courts.  Thus, there are several hundred parallel state court proceedings in the State of Ohio wherein state trial courts are adjudicating the very same policy language at issue in this case."  (Doc. No. 12 at PageID# 385.)  E.P. further argues—without any citation—that "parallel state court actions are not

14

merely limited to parties but extend[ ] to issues that the parties in this case may not be parties to." (*Id.* at PageID# 385-86.)  Westfield argues in its Sur-Reply that *Brillhart* itself outlined the contours of a parallel proceeding as a state court proceeding "in which all the matters in controversy between the parties could be fully adjudicated" and a suit "pending in a state court presenting the same issues, not governed by federal law, between the same parties."  (Doc. No. 14 at PageID # 416-17 (quoting *Brillhart*, 316 U.S. at 494-95).)

The Court finds E.P.'s argument unpersuasive.  The Supreme Court outlined the contours of a "parallel state proceeding" in *Brillhart* and *Wilton* to be a proceeding that involves the same parties and same state law issues.  *See Brillhart*, 316 U.S. at 494-95; *see also Wilton*, 515 U.S. at 283 (explaining that *Brillhart* discourages federal courts from "gratuitous interference" where "another suit *involving the same parties* and presenting opportunity for ventilation of the *same state law issues* is pending in state court") (emphasis added).  In *United Specialty Ins. Co.*, the Sixth Circuit stated that, with respect to insurance coverage issues, "a live 'controversy' exists and may remain to be adjudicated" if "issues relevant to the [insurance] coverage controversy are actually and concurrently being litigated in state court."  *United Specialty Ins. Co.*, 936 F.3d at 398.  *See also Parker Hannifin v. Standard Motor Prod.*, No. 1:19-cv-00617, 2019 WL 5425242, at *33 (N.D. Ohio Oct. 23, 2019) (finding that, with respect to the second *Grand Trunk* factor, "there is no parallel state court action relating to the question of whether there is a duty to defend the punitive damages award in the Barr Suit under the 1986 Agreement and, therefore, there is no risk of confusion about the legal relationships at issue in a state court action."); *Cafe Patachou at Clay Terrace, LLC v. Citizens Ins. Co. of Am.*, No. 1:20-cv-01462-SEB-DLP, 2020 WL 4592718, at *4 (S.D. Ind. Aug. 11, 2020) (finding that the absence of a "related or 'parallel' proceeding pending in state court" weighed in

favor of retaining jurisdiction over a restauranteur's declaratory judgment action against its insurer stemming from a COVID-19-related business loss coverage dispute).

E.P. points to no controversy in state court that relates to the parties or questions at issue in the instant matter. Thus, the Court finds that the instant dispute is independent because no parallel state action involving these parties and this dispute exists. *See Clifford*, 2014 WL 4805473, at *2 ("If the dispute is independent, the action will settle the controversy."). Therefore, the Court finds that a declaratory judgment would necessarily settle the controversy between E.P. and Westfield. Accordingly, the Court finds that this factor weighs in favor of exercising jurisdiction.

### 2. Whether Adjudicating the Declaratory Action Will Clarify the Legal Relations at Issue

The second factor is "closely related to the first factor and is often considered in connection with it." *Flowers,* 513 F.3d at 557. "[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* Consideration of this factor weighs in favor of this Court's exercise of jurisdiction. As the instant declaratory action would settle the parties' controversy with respect to whether Westfield's denial of coverage was proper, it follows that it would serve a useful purpose in clarifying the parties' legal relations with respect to that issue. Moreover, there is no parallel state court action relating to the question of whether Westfield had a duty to cover E.P.'s COVID-19-related losses and, therefore, there is no risk of confusion about the legal relationships at issue in a state court action. *See Flowers*, 513 F.3d at 557 (in considering the second *Grand Trunk* factor, it is proper to consider whether the court's decision would create any confusion about the parties' legal relations in any pending state court action).

16

### 3.  Whether Concerns Exist Over Procedural Fencing or Race for Res Judicata

The Court finds that there is no credible concern over procedural fencing or a race for res judicata here.  E.P.'s accusation that Westfield engaged in "forum shopping" is unfounded, as is its accusation that Westfield purposely contravened the forum-defendant rule.  Indeed, the forum-defendant rule is inapplicable with respect to actions removed pursuant to CAFA, like this one.  *See* 28 U.S.C. § 1453(b) (class actions are removable "without regard to whether any defendant is a citizen of the State in which the action is brought"); *see also In re Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d at 853.  Further, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record."  *Flowers*, 513 F.3d at 558.  That is particularly the case where, as here, there is no parallel state court proceeding relating to the question of whether Westfield had a duty to cover E.P.'s COVID-19-related losses.  *See Clifford*, 2014 WL 4805473, at *2.  Thus, the Court finds this factor weighs in favor of the exercise of jurisdiction by this Court.

### 4.  Whether Adjudicating the Declaratory Action Will Improperly Encroach Upon State Jurisdiction

The Sixth Circuit has divided this factor into three sub-factors: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Flowers*, 513 F.3d at 560.  The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action."  *Id.*  The second sub-factor asks "which court, federal or state, is in a better position to resolve the issues in the declaratory action."  *Id.*  This factor weighs against an exercise of jurisdiction when

17

there are "novel questions of state law." *Id.*  The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Id.*  In cases of insurance contract interpretation, the Sixth Circuit has previously held that such issues are "'questions of state law with which the . . . state courts are more familiar and, therefore, better able to resolve.'" *Id.* (quoting *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 273 (6th Cir. 2007)).  However, the Sixth Circuit has also noted that "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." *Id.* (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (finding that, while the declaratory judgment action seeking a determination of the policy's scope was governed by state law, "no state law or policy would be frustrated by the district court's exercise of jurisdiction, which would require the application of [state] law")).

> The Court notes, as it did in *Parker Hannifin*, that
>
> [T]here is no parallel state court proceeding relating to the question of whether [Westfield wrongly denied coverage to E.P.].  Thus, there is no risk that resolution of factual or legal issues by a state court will impact this Court's judgment or vice versa, with regard to [the scope of Westfield's coverage].  Moreover, while the Court has been asked to consider questions of state law to resolve the instant case, federal courts routinely apply principles of Ohio law to construe and interpret contracts in diversity cases.

*Parker Hannifin*, 2019 WL 5425242, at *33.

The Court acknowledges that the COVID-19 pandemic has given rise to new factual circumstances, but agrees with Westfield that adjudicating these claims "will involve a straightforward application of clear and unambiguous insurance policy language to the facts—a task Ohio federal courts are equipped to perform." (Doc. No. 9 at PageID# 372.)  *See also Cafe Patachou*, 2020 WL 4592718, at *4 (acknowledging that while the factual circumstances surrounding a COVID-

19-related insurance coverage matter were "novel," federal courts in Indiana "have regularly interpreted insurance policies and applied them to specific fact patterns. . . . An insurance policy is a contract and subject to the normal analysis accorded contractual language used in other contracts.") (internal quotations omitted).

Moreover, the Court notes that Plaintiff endeavors to represent a *nationwide* class of Westfield policyholders.  Whichever court adjudicates the other class members' claims may have to apply the law of the other 49 states as well.  *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) (holding that, evaluating potential class members' claims under Ohio's choice-of-law rules, the "laws of the potential class members' home States will govern their claims").  The Court agrees with Westfield that E.P. fails to mount "any argument for why Ohio state courts are better positioned than this Court to interpret and apply the state insurance laws of the nation's 49 other states." (Doc. No. 9 at PageID# 373.)

On balance, and viewing the subfactors together, the Court finds that the fourth factor is neutral.

### 5.   Whether a Better or More Effective Alternative Remedy Exists

As discussed *supra*, this Court has mandatory jurisdiction over E.P.'s monetary damages claims.  Staying E.P.'s damages claims while an Ohio state court adjudicates E.P.'s Declaratory Judgment claim is an alternative remedy, but it is not better, faster, or a more efficient use of judicial resources.  *See Adrian*, 481 F.3d at 422.  Because this Court must retain jurisdiction over at least part of E.P.'s Complaint, this factor weighs in favor of retaining jurisdiction over E.P.'s Declaratory Judgment claim as well.

For all the reasons set forth above, the Court finds that, on balance, the *Grand Trunk* factors support the exercise of jurisdiction over E.P.'s Declaratory Judgment claim relating to Westfield's duty to cover E.P.'s and putative class members' COVID-19-related business losses.

**V.      Conclusion**

Accordingly, and for all the reasons set forth above, Plaintiff's Motion to Remand (Doc. No. 8) is DENIED.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  October 6, 2020                    U. S. DISTRICT JUDGE

20